AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20) ☐ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
3/14/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: DTA DEPUTY



FILED
March 14, 2021
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION AT SANTA ANA
BY Nancy Boehme
Deputy Clerk, U.S. District Court

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSHUA DANIEL PRIEST,
  a/k/a "Joshua Daniel Priest-Peltier,"
  a/k/a "Joshua Daniel Peltier,"

    Defendant.

Case No. 8:22-mj-00199-DUTY

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, hereby state that the following is true to the best of my knowledge and belief. On or about the date of **January 31, 2022**, in the County of Orange, in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Firearm and Ammunition |

This criminal complaint is based on these facts:

*See* the facts set forth in the attached affidavit

☒ Continued on the attached sheet.

/s/
Complainant's Signature

Mark Burnett, FBI Special Agent
*Printed Name and Title*

Attested to by the complainant via telephone in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: March 14, 2022

**DOUGLAS F. McCORMICK**
*Judge's Signature*

City and State: Santa Ana, California

Douglas F. McCormick, U.S. Magistrate Judge
*Printed Name and Title*

AUSA: Robert J. Keenan // Cell: (213) 393-7762

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Mark Burnett, being duly sworn, declare and state as follows:

**INTRODUCTION**

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since January 2006. I am currently assigned to the Los Angeles Office, Orange County Resident Agency. I investigate, among other things, child pornography and child sexual exploitation crimes in the Central District of California. I received training in the investigation of crimes against children during my attendance at the FBI Academy in Quantico, Virginia. In addition, I have participated in numerous investigations of criminal activity, including the investigation of crimes against children and cybercrimes. During the investigation of these cases, I have executed, and participated in the execution of, numerous search warrants and have seized evidence of violations of the United States Code. I have interviewed numerous subjects of child pornography and child exploitation crimes. I have also reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. Moreover, I am a federal law enforcement officer engaged in enforcing criminal laws, including 18 U.S.C. §§ 2252 and 2252A, and I am authorized by law to request a search warrant.

**PURPOSE OF AFFIDAVIT**

2. This affidavit is made in support of a criminal complaint and arrest warrant for **JOSHUA DANIEL PRIEST**

1

("PRIEST"), also known as "Joshua Daniel Priest-Peltier" and "Joshua Daniel Peltier," for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Firearm and Ammunition.

3. The facts set forth in this affidavit are based upon my review of the law enforcement reports and other records referenced herein, what I have been told by other law enforcement agents, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## PROBABLE CAUSE

4. I have reviewed the Incident/Investigation Report of Officer M. Luu of the Costa Mesa Police Department ("CMPD"), Case #22-001748, regarding the investigation that led to the arrest of JOSHUA DANIEL PRIEST on January 31, 2022 for narcotics and firearm violations. I have also reviewed certain other law enforcement reports referenced herein (including, e.g., supplemental reports attached to Officer Luu's report), and PRIEST's rap sheet and court records regarding certain of the prior felony convictions referenced herein. Based on this review, I have learned the following facts:

**A. January 31, 2022: CMPD's Response to Suspicious Person Call and Investigation of PRIEST**

5. On January 31, 2022, at approximately 8:30 p.m., the CMPD received a call regarding a suspicious person in a vehicle at an apartment complex in Costa Mesa, CA. The caller ("CALLER") reported that a person identified as Joshua Priest-Peltier (PRIEST), had been threatening another person associated with the CALLER via text message. According to the CALLER, PRIEST was currently sitting in his vehicle inside the parking lot of the CALLER's gated apartment complex. The CALLER described PRIEST's vehicle as a black colored 4-door Trailblazer with black colored rims. The plate was provided as #7RBJJRB or similar. As Officer Luu drove to the location, CMPD Officer S. Moore provided him with the vehicle's correct license plate (#7RPJ388) from a previous CMPD contact.

6. The CALLER indicated, in substance, that PRIEST was there because of a recent interpersonal conflict and this was the second time PRIEST was on the property at the apartment complex.

7. As he drove to the location, Officer Luu performed a local records check of PRIEST and learned that PRIEST, who has an alias of "Wreckless," had an extensive history with CMPD and was documented as a gang member from "White Aryan Resistance," also referred to as "WAR." Officer Luu's report notes that the White Aryan Resistance is a white supremacist Neo-Nazi organization.

3

8. Officer Luu's report notes that CMPD had a prior jail booking photograph of PRIEST. Officer Luu noted that in the photograph, PRIEST has a small star tattooed under his right eye.

9. A further records check by Officer Luu showed PRIEST was on state parole, and CMPD Communications confirmed that PRIEST was still currently on parole, with an expiration date of December 23, 2022.

1. **Officers Located and Detained PRIEST**

10. Upon arriving on scene, Officer Luu drove south towards the rear of the complex, and Officer Gallardo drove into the parking lot and headed eastbound. As Officer Luu drove around the parking lot and back towards the entrance gate, he saw that Officer Gallardo had activated his patrol vehicle's spot-light at a male subject walking towards his patrol vehicle. As Officer Luu drove up towards the male subject and he glanced back, Officer Luu noticed a small star tattoo under his right eye and immediately recognized the subject to be PRIEST.

11. Officer Luu also noticed that PRIEST's shoes were tied with red shoelaces. Based on his training and experience, Officer Luu knows that white supremacist gang members commonly use red shoelaces to indicate that they have committed a violent act or shed blood on behalf of the gang or the skinhead movement.

12. Officer Luu asked if PRIEST was still on parole. PRIEST replied, "Yeah." When asked if he had anything illegal on his person, PRIEST could not answer directly and just noted

that the officers "caught [him] off guard." PRIEST also could not answer directly when asked about his parole search-and-seizure terms. Officer Luu notes, PRIEST was also defensive and slow to respond when asked why he was at the apartment complex. When Officer Luu confronted PRIEST about the fact that he did not live at the complex, PRIEST confirmed that he did not. However, PRIEST said his girlfriend lived at the apartment complex, and they were going through problems and in a dispute over property. PRIEST told the officers that a friend had dropped him off at the location.

13. Due to the nature of the call (i.e., PRIEST's reported threats to the person associated with the CALLER) and PRIEST's parole status and odd, fidgety behavior, Officer Luu placed PRIEST in handcuffs. Officer Luu told PRIEST that he was not under arrest at that time, but was being detained during the investigation. When asked if he understood that, PRIEST confirmed he did.

14. Officer Gallardo confronted PRIEST about his claim that a friend dropped him off at the apartment complex. PRIEST was defensive and maintained his story about being dropped off at the location. Officer Luu noticed that a black Chevy Trailblazer with black rims noted by the caller was parked just 20 feet away from where PRIEST had been detained. Officer Luu noticed the license plate on the vehicle also matched the license plate to PRIEST's vehicle that was found on a previous call-for-service.

15. Officer Luu states that he performed a records check of the license plate with CMPD Communications, which advised Officer Luu that the vehicle was registered to PRIEST.

2. **Officers Discover Firearm & Ammunition in PRIEST's Vehicle**

16. Officer Luu approached PRIEST's Trailblazer and looked through the window at the area around the driver's seat. In plain view from outside of the car, Officer Luu saw a pile of items on the driver's seat, and a handgun was partially visible underneath the other items. Specifically, Officer Luu was able to see about two inches of the handgun's muzzle and the front sight. There was no orange tip on the front to indicate the gun was fake. Officer Luu also noted that the vehicle was unlocked.

17. Based on his discovery of the firearm and PRIEST's parole status, Officer Luu conducted a search of PRIEST's person. During the search, Officer Luu asked PRIEST why he had a gun in his vehicle. PRIEST said it was not a gun and refused to talk about it. Officer Luu asked PRIEST if he could search PRIEST's vehicle. PRIEST said it was not his vehicle. When asked if he had his vehicle keys on his person, PRIEST said he did not, noting that his "dumbass" ex-girlfriend had the keys. He reiterated that he was there to sort out a property dispute with his ex-girlfriend. Officer Luu did not find a key to the vehicle in his search of PRIEST's person.

18. Based on his discovery of a firearm in plain view in a parolee's unlocked vehicle, the fact that PRIEST was on parole with search and seizure terms, and the CALLER's report that

PRIEST was previously seated in the vehicle and had previously threatened a person associated with CALLER, Officer Luu opened PRIEST's vehicle to take possession of the handgun. Officer Luu noted, the gun was covered (partially) with several bags, as if as if someone was quickly attempting to conceal it from view.

19. A report by Detective J. Smith, who searched the vehicle, describes the firearm as a Springfield Model XDS 9mm semi-automatic handgun, bearing serial number S3949572.

20. Officer Luu found the firearm was loaded with a magazine that had five rounds of 9mm ammunition in it, and one round of 9mm ammunition was in the gun's firing chamber. A records check on the handgun confirmed that it was stolen during a recent residential burglary of a residence in Placentia, CA in December 2021. (In a later phone call with CMPD Detective J. Smith, and reported by Detective J. Smith, the registered owner of the handgun confirmed that the gun was stolen from his house in December 2021; he does not know PRIEST; and PRIEST did not have permission to possess his property.)

21. Officer Moore stood by the firearm as Officer Luu returned to PRIEST and questioned him about the gun. When Officer Luu asked if PRIEST could talk to him about the gun, PRIEST replied, "I can't" and further refused to speak to any officers present at the scene about the gun or about what was happening.

22. Officer Gallardo canvassed the area where he had initially observed PRIEST. PRIEST had been seen walking in the bushes approximately 15 feet away from his vehicle. There,

Officer Gallardo located the vehicle keys hidden in the bushes by an air-conditioning unit. It was the keys PRIEST had claimed his ex-girlfriend had. Officer Gallardo pressed a button on the key fob, and it unlocked and locked PRIEST's vehicle, confirming it belonged to the vehicle.

23. Based on the forgoing facts -- namely, the discovery of the unsecured, loaded, and stolen firearm in PRIEST's vehicle, PRIEST's criminal history and convictions making him a felon, in addition to his parole terms prohibiting him to be in possession of such firearm and ammunition, Officer Luu placed PRIEST under arrest for violations of Cal. Penal Code § 25850(c)(1) (Felon in Possession of a Firearm), Cal. Penal Code § 25850(c)(2) (Carrying a Stolen Loaded Firearm), and Cal. Penal Code § 30305(a)(1) (Possession of Ammunition by a Felon).

### 3.   Officers Discover Controlled Substances, Indicia of Drug Sales, and Other Evidence in PREIST's Vehicle

24. CMPD Officers searched PRIEST's vehicle. The search of PRIEST's vehicle led to the discovery of the following evidence of drug-trafficking: (1) multiple baggies of a white-colored, chalky substance believed to be Fentanyl; (2) two digital scales; (3) numerous loose rubber bands similar to those used to bind the baggies that contained the Fentanyl; (4) numerous empty plastic baggies. Based on Officer Luu's training and experience, he determined that this evidence was indicative of drug sales.

25. In addition to the drug-related evidence, officers found that PRIEST's vehicle also contained the following items:

(1) a bag containing bolt cutters, pry bars, hammers, and latex gloves, which Officer Luu believed to be burglary tools; (2) a collapsible baton; (3) pepper spray; (4) a driver's license of another person, who, in a later interview with Detective Smith, confirmed it was stolen and that PRIEST was not authorized to possess it; (5) an EBT card in the name of another person; (6) two counterfeit $100 bills; and (7) a notebook containing what appear to be credit card account numbers, passwords, and PIN.

26. During the process of booking the seized evidence, Officer Luu also found a debit/credit card with the letters "SWP" on it. Based on his training and experience, Officer Luu notes that "SWP" usually refers to "Supreme White Power," a common reference made by white-supremacist gang members. Officer Luu noted that there were also two lightning bolts resembling two "S" on the front cover of the card, another symbol used by white-supremacist gang members or Neo-Nazi's as a reference to the Schutzstaffel or "SS." Along with the lightning bolts, was "$recklessjay88." PRIEST's name (Josh Priest) was on the back of the card.

    4.    **Lab Results from Orange County Crime Lab**

27. I have reviewed a February 17, 2022 lab report from the Orange County Crime Lab ("OCCL") regarding drug evidence relating to CMPD Case #22-01748, that is, the arrest of PRIEST on January 31, 2022. The OCCL report indicates, among other things, that the seized drug evidence included: (1) a substance

containing methamphetamine; and (2) a substance containing Fentanyl.

B.   **Defendant's Criminal History**

28.  I have reviewed PRIEST'S criminal history record (<u>i.e.</u>, rap sheet) and certain state court records. Based on that review, I am informed that PRIEST has multiple prior felony convictions, including, without limitation, the following:

a.   Transportation of Controlled Substance for Sale, in violation of California Health & Safety Code Section 11379(a), and Possession of Controlled Substance for Sale, in violation of California Health & Safety Code Section 11378, in the Superior Court for the State of California, County of Orange, Case No. 17CF0787, on or about June 26, 2018;

b.   Possession of Controlled Substance for Sale, in violation of California Health & Safety Code Section 11351, and Possession of Controlled Substance for Sale, in violation of California Health & Safety Code Section 11378, in the Superior Court for the State of California, County of Orange, Case No. 17WF2671, on or about June 26, 2018;

c.   Possession of Controlled Substance for Sale, in violation of California Health & Safety Code Section 11351, and Sale or Transportation of Controlled Substance, in violation of California Health & Safety Code Section 11352(a), in the Superior Court for the State of California, County of Orange, Case No. 19WF1351, on or about June 18, 2020;

d.   Possession of Controlled Substance for Sale, in violation of California Health & Safety Code Section 11351, and

Possession of Controlled Substance for Sale, in violation of California Health & Safety Code Section 11378, in the Superior Court for the State of California, County of Orange, Case No. 19WF2633, on or about June 18, 2020; and

      e.   First Degree Residential Burglary, in violation of California Penal Code Sections 459-460(a), and Possession of Controlled Substance with Firearm, in violation of California Health & Safety Code Section 11370.1(a), in the Superior Court for the State of California, County of Orange, Case No. 20CF0725, on or about June 18, 2020.

### C. **Interstate Nexus**

29.  I have reviewed the February 18, 2022 report of FBI Special Agent Trevor Twitchell, who is qualified to do interstate nexus determinations regarding firearms and ammunition, regarding his examination of the firearm and ammunition that the CMPD seized from PRIEST's vehicle on January 31, 2022. Based on that examination, Agent Twitchell made the following findings:

      a.   The firearm is a Springfield Armory, Model XDS-9, 9mm caliber pistol, bearing serial number S3949572. The pistol is a "firearm," as defined in Title 18, United States Code, Chapter 44, Section 921(a)(3). The pistol was manufactured by Springfield Armory in either Illinois or internationally, not in the State of California. Therefore, because it was recovered by police in California, the pistol must have been shipped or transported in interstate and/or foreign commerce.

   b. As to the ammunition, four rounds of 9mm caliber ammunition, with a headstamp "9mm + P CBC," were manufactured by CBC Global Ammunition internationally, and two rounds of 9mm caliber ammunition, with the headstamp "R-P 9mm LUGER," were manufactured by Remington in either Arkansas or Connecticut. The ammunition was not manufactured in the State of California. Therefore, because all of the rounds of ammunition were recovered in California, they must have been shipped or transported in interstate or foreign commerce.

   c. Therefore, the firearm and ammunition traveled in or affected interstate commerce and/or foreign commerce.

## CONCLUSION

30. Based on the foregoing facts, I submit that there is probable cause to believe that JOSHUA DANIEL PRIEST has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of Firearm and Ammunition.

            /s/
            MARK BURNETT
            FBI, Special Agent

Attested to by the applicant
via telephone in accordance
with the requirements of Fed.
R. Crim. P. 4.1 on this day,
March 14 , 2022.

**DOUGLAS F. McCORMICK**
  DOUGLAS F. McCORMICK
UNITED STATES MAGISTRATE JUDGE