MEGHAN BLANCO (238171)
LAW OFFICES OF MEGHAN BLANCO
    28202 Cabot Road, Suite 300
    Laguna Niguel, California 92677
    Telephone:   (949) 296-9869
    Facsimile:   (949) 606-8988
    E-mail:   mblanco@meghanblanco.com

Attorney for JOSHUA PRIEST

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-CR-33-DOC |
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| JOSHUA PRIEST, | |
| Defendant. | |

Defendant Joshua Priest, by and through his counsel of record, Meghan Blanco, files the attached sentencing memorandum. For the reasons stated below, Mr. Priest seeks a 120-month sentence followed by a three-year period of supervised release. He also requests that the Court refer him to the RDAP program.

//

//

//

1

This memorandum and Mr. Priest's sentencing recommendation are based on the attached memorandum of points and authorities, the files in this case, and any other argument or information the Court wishes to hear at the sentencing hearing.

Respectfully Submitted,

Dated: September 8, 2023

_//s// Meghan Blanco_
MEGHAN BLANCO
Counsel for Defendant
JOSHUA PRIEST

## MEMORANDUM OF POINTS AND AUTHORITIES

A. Introduction

Joshua Priest comes before this court having entered an open plea to the indictment in this case, which charges various drug and possession-related crimes. At the time of his arrest in this matter, Mr. Priest was fighting a losing battle with chronic, life-consuming addiction. Every single decision he made was fueled by a physiological need for more drugs.

The reasons for Mr. Priest's addiction are clear and are discussed more fully below. The results were tragic. Addiction tainted every aspect of Mr. Priest's life from an early adolescence into adulthood. It caused expulsion from school, chronic homelessness, frequent incarceration, and over 30 overdoses, some of which led to Mr. Priest being placed on life support. His addiction was so strong that following his release from custody he would intentionally overdose with an "overdose buddy" so he would build a tolerance, and hopefully, not die alone.

Despite Mr. Priest's frequent incarcerations and hospitalizations, he has never been afforded meaningful treatment or support. Now that he is in the federal system, it is counsel's sincere hope that the Court crafts

a sentence that meets the sentencing goals of 3553A,
including providing rehabilitative support following Mr.
Priest's eventual release from custody.

B. Offense Conduct

The offense characteristics are accurately described
in the very detailed presentence report.  Mr. Priest sold
relatively small quantities of narcotics, like what is
typically prosecuted in superior rather than federal
courts.  He did so in a simple scheme using online
advertisements, also commonly seen in state court
prosecutions.  Although the advertisements were somewhat
coded using street vernacular for the types of drugs
offered, they were quite obviously for the sale of
narcotics, and anyone with any knowledge of drugs sales,
including law enforcement, would readily understand the
nature of the ads.  Mr. Priest did not misrepresent what
he was selling, and he did not try to hide his sales.  The
openness with which he sold drugs was likely due to his
motivations:  he was unemployed and had recently assumed a
father-like relationship with his ex-girlfriend's minor
child.  He desperately needed money to pay for a down
payment on an apartment so she could regain full custody
of her child.  He also needed money to support his own
addiction.

4

His sales were small, ranging from 40 dollars to 160 dollars. When agents asked Mr. Priest whether he could sell them ¼ pound of methamphetamine, Mr. Priest advised he would need a week to get his hands on that quantity. He did not have immediate access to large quantities of drugs, and he did not ever possess large quantities of drugs for sale.

C. Mr. Priest's Personal Characteristics

Mr. Priest's childhood can be summarized in one word: tragic. He was never given a shot at maturing into a healthy adult. He suffered from neglect, instability, poverty, untreated psychosis, and physical and psychological abuse. His mother described Mr. Priest as being "at the bottom of the totem pole," as a child. (PSR 121). Literally everything in her life was more important to her than her son, and Mr. Priest knew it. She chose drugs and men over him. He constantly moved from school to school as his mother chased dysfunctional and abusive partners. He had no real friends as a child, because he never stayed at a school long enough to develop meaningful friendships. At home, he was abused at the hands of his mom's partners and he witnessed the abuse of his mother and sister. When his mother and sister sought help from law enforcement, their pleas were largely ignored. Mr.

Priest, as a young and confused little boy, felt responsible. He carried a huge burden on his little shoulders.

In response, Mr. Priest sought love, affection and acceptance from anyone who would give it to him. He learned that home was not safe, so he turned to the streets for support. At an early age he was introduced to hard drugs from his street "friends." He used the hard drugs to numb the pain and trauma that dominated his young life. Mr. Priest became an addict at a very young age.

Mr. Priest's addiction grew over the years. He has overdosed over 30 times. Many of these overdoses were intentional – Mr. Priest would do so with a "buddy" to build his tolerance so that when he overdosed the next time, alone, he would not die. He has been hospitalized dozens of times and placed on life support more than once. But his addiction was too strong for Mr. Priest to fight alone. After being released from hospitals or jails, he would run back to the one thing that made his life feel tolerable: drugs.

Mr. Priest's addiction is the worst counsel has seen in 19-years of practice. While the Mr. Priest's conduct in this case cannot be excused, it is counsel's true hope that the Court can use the current case to provide Mr. Priest with the tools and support he needs to finally turn his life around. He has not had that chance until now.

D. Argument

   1. A 120-Month Sentence is Appropriate

   A 120-month sentence and three-year period of
supervised release is sufficient but not greater than
necessary to achieve the goals of sentencing.

   Core principles in sentencing have now been resolved
by the Supreme Court in *United States v. Booker,* 125 S.
Ct. 738*, (2005), Gall v. United States*, 128 S.Ct. 586, 591
(2007) and *Kimbrough v. United States*, 552 U.S. 85, 128
S.Ct. 558(2007). The Guidelines are not only not mandatory
on sentencing courts; they are also not to be presumed
reasonable. *Nelson v. United States, 129 S.Ct. 890,891*
*(2009.) What the Supreme Court has described as the*
*"overarching provision" of 18 USC section 3553(a) is set*
*forth in that provision's very first sentence – that "the*
*court shall impose a sentence sufficient, but not greater*
*than necessary, to comply with the purposes of sentencing*
*set forth in subparagraph (2) of this subsection."*
*Kimbrough v. United States*, 128 S. Ct at 570. Thus,
factors justifying a sentence outside the guideline are no
longer required to be extraordinary." *Gall*, 128 S.Ct. at
595. Congress could not have been clearer in directing
that no limitation ... be placed on the information

concerning the background, character, and conduct of a Defendant that a district court may receive and consider for the purpose of imposing an appropriate sentence. *Pepper v. United States, 131 S. Ct. 1229, 1241 (2011)*. Stated differently, after *Booker*, a sentencing court must (1) correctly calculate the advisory guideline range and (2) determine a reasonable sentence by considering the sentencing range provided by the Sentencing Guidelines and the §3553(a) factors. *United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005)*.

Mr. Priest knows that selling drugs is an extremely serious offense. He understands the dangers of drug use. Indeed, his conduct in this case was the result of his own addiction.

However, one cannot view Mr. Priest's conduct in isolation. It was the result of extreme childhood trauma, untreated mental illness (PSR 139) and addiction.

Mr. Priest's suggested sentence of 120-months is a significant punishment for the crimes charged. It will deter future criminal conduct by Mr. Priest and others who are inclined to engage in drug sales. But it also recognizes the circumstances of Mr. Priest's criminal conduct and offers him hope that with hard work and determination, he will be released from custody and be afforded the opportunity to finally live a healthy and productive life.

### 2. Mr. Priest's Time in Custody

Mr. Priest's time in custody has not been easy. He is housed at the Santa Ana City Jail. Since counsel's substitution into his case, the jail has experienced a number of lock-downs and closures. In addition, Mr. Priest has been housed in a single unit cell for much of his time in custody. While in his cell, he has no contact whatsoever with other people. When the facility is on lock-down, he will go days without meaningly human contact.

The conditions of Mr. Priest's incarceration are not unique to him, but they do warrant consideration by this Court in determining an appropriate sentence under 3553A.

### 3. Career Offender Guidelines

Mr. Priest objects to the application of the career offender Guidelines. However, since application of the career offender Guideline's do not change his calculated Guidelines Range, this issue is not being fully briefed. Mr. Priest will submit further briefing should the Court wish him to do so.

D.   Conclusion

Mr. Priest recognizes that he should be punished for his conduct in this case and that he *will* serve significant time in prison.  For all of the reasons discussed in the PSR and above, this Court should sentence him to 120-months' custody, three years of supervised release, and no fine.  Mr. Priest further requests that the Court recommend admission into the RDAP program, even though he understands he may not be awarded credit for his participation in it.

Dated: September 8, 2023

____//s// Meghan Blanco____
MEGHAN BLANCO
Counsel for Defendant
JOSHUA PRIEST